### L. J. BRADFORD *v.* M. WARE'S EXECUTORS, ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—304.]

**Settlement of Partnership Accounts:**

> Where partners have kept no accounts or books and can therefore arrive at no just settlement of their accounts and one of them applies to a court of equity asking a settlement of the accounts and alleging a large loss in the business, in the absence of any books or accounts, nearly all the court is able to ·do is to leave the parties where they are and dismiss the petition.

### APPEAL FROM BRACKEN CHANCERY COURT.

October 23, 1884.

OPINION BY JUDGE PRYOR:

These partnership transactions between the appellant and the appellees except one of them began in the year 1858 and run ·through a period of ten or eleven years from that time. Other parties were interested at intervals as partners but were purchased out by these parties and their accounts settled and now the sole controversy between the parties is as to the true and correct statement of the accounts between them. They were engaged in the purchase and sale of tobacco, the appellant Bradford furnishing the money and the other partners making the purchases and appellant making the sales. There were various partnerships between them during the period mentioned, other parties becoming interested for a particular year, but all of these partnerships and partnership accounts are so mingled as to make them inseparable and then no accurate adjustment or settlement can be made nor can the chancellor or commissioner approximate what would be considered a fair settlement by reason of the confused state of accounts, or for the· stronger and better reason that no intelligent account was kept by any of the parties. The Wares and McAfee who were the buying agents of the several firms kept no account of their purchases or the money received by them upon which any settlement could be made. Bradford, the salesman, and the moneyed man of the concern kept no account of sales or the amount of moneys collected by him from the proceeds of the sales, and he seems to have collected

most of the money but the Chancellor through his commissioner is left to trace the purchases of the tobacco by the hogshead, or in parcels as purchased from the year 1858 until the year 1867 in order to ascertain the number of hogsheads purchased, and then ascertain the number delivered to Bradford, and the sales and collections made by him during the entire period, and in attempting this vast labor it is impossible by reason of the conflicting statements made and the conflictng accounts to come to any correct conclusion.

Two intelligent commissioners have endeavored to make the settlement and neither report is satisfactory to the parties or the commissioners making them and the result when reached makes such a small difference between the partners in the settlement of accounts that had been running or in existence so many years before the settlement was made as would have authorized the Chancellor to decline giving any judgment in favor of the one against the other. The amount of money advanced by Bradford so far as it appears was between eighty and one hundred thousand dollars and the losses of the partnership reached from his statement many thousand dollars. He is charged with the entire sales of all the tobacco as far as can be ascertained, but it is of great doubt whether appellees have been charged with the amount of moneys they received of Bradford credited by the amount paid out by him.

The partner McAfee is credited or rather Bradford is charged with $2,115.24, money advanced by McAfee for the purchase of tobacco in 1866. This is evidently error because the appellant had been already charged with the entire cost of the tobacco, and if so the firm owed McAfee this money and not Bradford.

McAfee who claims a credit of two items for moneys advanced in the year 1867, $1,077.80 and $1,404.62, and these sums are charged to Bradford. If H. E. Ware is to be believed this money was never received by Bradford as he furnished no money to buy tobacco for 1867, although interested, but the money was furnished by Besarden and others of Cincinnati, and in a settlement with them for that year these parties, the Wares and McAfee, in their settlement with the Cincinnati partners obtained all the credits to which they were entitled.

Besides the commissioner has excluded from his report the business for the years 1866, 1867 and 1868 for the reason and as the proof conduces to show the business of those years was settled, and

if so, we see no reason why the accounts of McAfee for moneys advanced for that year should be charged to Bradford in the settlement and again the proof conduces to show that for the year 1867 of this money advanced by the Cincinnati firm there was near or about $5,000 unexpended or unaccounted for and instead of paying the money to the parties of whom they purchased the tobacco, they executed to them the firm notes of Bradford & Company and these notes Bradford had to pay. It is true they say that they used this money in paying off old firm debts previously contracted but still Bradford is attempted to be made responsible and the fact that he is credited by the amount of money received by him for tobacco does not show that he has been repaid the amount of this particular sum. If he furnished the money why was it not paid by the appellees to the owners. They as buyers obtained it and still the firm is indebted in 1867 by the existence of these notes when Bradford according to the course of dealing between them or the Cincinnati firm had advanced the money.

H. E. Ware, one of the partners, and Bradford were partners in a dry goods store in the vicinity of which much of this tobacco was purchased. Bradford furnished all the money amounting to near $18,000 with which to start their enterprise and has lost this entire sum and become indebted to M. Ware, the father of H. E. Ware, and McAfee, to the one in the sum of $2,414.57 and to the other $3,587.35, as reported by the commissioner. It is manifest by the proof in this record by H. E. Ware that nearly the entire proceeds of the goods in this store went to pay the orders of the other members of the firm drawn on the firm by M. Ware and McAfee or those of the partners engaged in purchasing the tobacco. We think this fact if disputed must be regarded as established beyond controversy, and such was the report of the commissioner whose report is made the foundation of the judgment below. It is argued however that the appellant Bradford is not affected by this report because he is credited by all the proceeds of the sale of the tobacco. This may be, but at the same time it is conceded that he furnished all or nearly all the money, and if so, what became of the money that was paid from the proceeds of the store to those of whom tobacco was purchased.

It is not pretended from the proof or by the commissioner making the report that any credit was given Bradford on the store account

but on the contrary he was refused a credit because his firm had failed to keep an account of the disbursements by the store for the tobacco purchased. The appellees may have kept the money advanced by Bradford and drawn these orders to make the payment. While it is evident that much of the proceeds from the mercantile establishment went in this way, as no account was kept of the amounts paid and to whom, it was not error for the commissioner to disregard the claim but while considering the case in that light it must not be forgotten that the other partners kept no account of the orders given, or of the purchases made, or the moneys received of Bradford by them and paid out for tobacco. He applies to a Court of Equity asking a settlement of the accounts alleging a large loss as the result of the partnership, and is asking the Chancellor to do that which the parties themselves could not do' for the want of a correct statement, or one approximating the true amount advanced by Bradford and paid out by the other partners for this tobacco. They were all certainly laboring under the belief that no profit had been made else a more speedy adjustment of the matters between them would have been made, or at least their rights as partners asserted. We think it is manifest from the record that Bradford, the appellant, has been the real sufferer in these transactions, and that if either party is entitled to a judgment it is the appellant, but he has invited the Chancellor to make this settlement for him and when looking to his neglect as well as that of his partners who were not more vigilant he finds it impracticable to make any adjustment of the accounts, and therefore his petition should be dismissed as well as all of the petitions and claims set up by the appellees or their personal representatives asking a judgment, the one against the other. The commissioner making the settlement regarded this as the only equitable settlement of the differences between them and in this he is sustained by the Chancellor in his opinion if not on the judgment rendered. The commissioner reported a statement of the accounts only because he was required to do so by the orders of the reference expressing the conviction at the time that the result of his calculations was more speculative than real.

The judgments therefore in favor of M. Ware and McAfee or their personal representatives against Bradford are each *reversed*, and judgment dismissing the claims the one against the other. The judgment against H. E. Ware is left undisturbed as it is not before

us for rescission. The dismissal will be at the cost of Bradford. Judgment *reversed* and cause remanded for proceedings consistent with this opinion.

*Wm. Lindsay, John B. Clark, for appellant.*

*B. G. Willis, E. Whittaker, for appellees.*

[Cited, in *Garnett v. Wills,* 24 Ky. L. 621, 69 S. W. 695.]